```
                UNITED STATES DISTRICT COURT         FILED
                NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION           98 AUG 13 PM 2:42

                                                  U.S. DISTRICT COURT
THOMAS A. SCARBROUGH,           )                   N.D. OF ALABAMA
                                )
     Plaintiff,                 )
                                )
vs.                             )    Civil Action No. CV-97-S-0922-S
                                )
CELTIC LIFE INSURANCE CO.,      )
                                )                     ENTERED
     Defendant.                 )
                                                    AUG 13 1998
                     MEMORANDUM OPINION
```

Thomas A. Scarbrough graduated from Vanderbilt University in May of 1995. As one result of that milestone event, marking the transition from dependency to young adulthood, Tom Scarbrough no longer was eligible for coverage under his father's group health insurance plan. (Plaintiff's Deposition at 65-66.) Depending upon one's point of view, Celtic Life Insurance Co. fortuitously made contact with Scarbrough at about the same time, mailing him a brochure explaining the benefits available under its "PostGrad[uate]" health insurance policy, and, an application for coverage. (Emily Scarbrough Deposition at 27-28.) Scarbrough completed the application form and submitted it on or about June 2, 1995. (Plaintiff's Deposition at 70-71.) Celtic accepted the application and issued a health insurance policy providing coverage for an initial term of six months, beginning June 4, 1995, and ending December 3, 1995. (Id. at 73-74.)

Scarbrough injured his back on or about June 14, 1995. He sought medical treatment for the injury in September of 1995, and

underwent treatment and physical therapy until December of 1995. (*Id.* at 49, 51.)

Scarbrough telephoned Celtic *via* its toll free number during November of 1995, to inquire about the possibility of purchasing a health insurance policy for a term of one year, beginning on the date his initial policy expired in December. (*Id.* at 74-75.) He was told by an unidentified Celtic representative that, although the company did not offer policies for terms of that length, "[w]hat we can do is renew your first policy and extend the first policy." (*Id.* at 79 (emphasis supplied).) Thereafter, plaintiff's mother completed a second application on her son's behalf and submitted it to Celtic on or about November 8, 1995. (Emily Scarbrough Deposition at 44-46.) The second six-month policy stated an effective date of December 4, 1995. (*See* Plaintiff's Deposition Exhibit 5.)

Plaintiff sought further treatment for his back injury from a different physician during December of 1995. That physician, Dr. Tom Staner, recommended that he undergo a surgical procedure called a microdiscectomy. (Plaintiff's Deposition at 52-57.) Plaintiff and his father telephoned Celtic in January of 1996, to obtain authorization for the surgery. They spoke with "Lucy," who issued a confirmation number to plaintiff. (*Id.* at 33-35.) Dr. Staner performed the procedure on January 29, 1996. (*Id.* at 57.) Celtic then denied plaintiff's claim for payment of medical and hospital bills incurred as a result, saying his back injury was a

2

preexisting condition specifically excluded from coverage. (*Id.* at 114-16; Collings Deposition at 40-42.)

Plaintiff commenced this action on March 3, 1997, in the Circuit Court of Jefferson County, Alabama. He alleged three state law claims: breach of contract; fraudulent misrepresentation; and, bad faith refusal to pay a valid insurance claim. Defendant removed the action to this court on April 14, 1997, asserting diversity jurisdiction. The action now is before the court on defendant's motion for summary judgment.

## I. DISCUSSION

A federal court sitting in diversity must apply the law of the state in which it sits: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

### A. Fraudulent Misrepresentation

To prove a claim of fraudulent misrepresentation under Alabama law, plaintiff must establish (1) a false representation (2) of an existing material fact (3) that is justifiably relied upon, and (4) damage as a proximate consequence. *Pinyan v. Community Bank*, 644 So. 2d 919, 923 (Ala. 1994). Defendant challenges plaintiff's proof on the first and third elements.

#### 1. False representation

Defendant denies making a misrepresentation to plaintiff. Celtic contends its representatives never told plaintiff his

3

preexisting back condition would be covered under the second policy that took effect on December 4, 1995.

Plaintiff presents evidence, however, that a Celtic representative told him in November of 1996 that, while the company did not issue policies for terms as long as one year, the company would "renew [his] first policy and extend the first policy." (Plaintiff's Deposition at 79 (emphasis supplied).) Those words reasonably could be taken to mean that the coverage provided by plaintiff's first policy would be "extended" for another six-month period, rendering any exclusionary language concerning a preexisting condition irrelevant. Moreover, plaintiff testified that he and his father telephoned Celtic before his back surgery in January of 1996, and after the effective date of the second policy, and received approval for the surgical procedure from a company representative. (Id. at 115-19.) That evidence is sufficient to raise a jury question as to whether Celtic, or one of its representatives, made a false representation to plaintiff regarding the nature and existence of his coverage.

2. Justifiable reliance

Plaintiff admittedly read the first application he personally completed during June of 1995. That application contained the following statements: "Each PostGrad policy is considered to be a new policy, regardless of renewal terms. Any conditions manifested during a PostGrad policy period will be determined as a preexisting condition in subsequent policies and will not be covered." (Collings Deposition Exhibit 3; Plaintiff's Deposition at 73.)

4

Moreover, both the first application form completed by plaintiff, and the second one completed on plaintiff's behalf by his mother, contained the following statement: "I understand that the Certificate or Policy applied for will not pay benefits for any expense incurred on account of any conditions for which any insured person has had treatment or symptoms before the effective date." (*Id.*)

Thus, Celtic contends plaintiff's reliance on any contrary representations by one of its telephone representative were "so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." Under Alabama law:

> A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.

*Hall v. Gaines*, 613 So. 2d 370, 372 (Ala. 1993)(citations and internal quotation marks omitted). Moreover, a party ordinarily is "bound by the terms of a document he signs in spite of inconsistent oral statements." *Valley Properties, Inc. v. Strahan*, 565 So. 2d 571, 581 (Ala. 1990).

Nevertheless, Celtic ignores an additional, significant fact: plaintiff received pre-certification approval from Celtic <u>before</u> his surgery and <u>after</u> the effective date of the second policy. Furthermore, the first policy issued to plaintiff stated that pre-existing conditions "fully disclosed" to Celtic and "not

5

specifically excluded" under the policy were covered. (See Collings Deposition Exhibit 6.) Plaintiff's back condition is nowhere specifically excluded from coverage under the second policy. Celtic admittedly covered medical expenses related to treatment for plaintiff's back condition during the first policy period. Thus, Celtic plainly was aware of plaintiff's back condition on the date one of its representatives allegedly told plaintiff the company would "renew ... and extend the first policy," and later, during the second policy period, when another Celtic representative pre-certified his back surgery. Those events could have "lulled [plaintiff] into a feeling of security" regarding his coverage. *See Arkel Land Co. v. Cagle,* 445 So. 2d 858, 861 (Ala. 1983). Plaintiff's evidence thus creates a genuine issue of a material fact as to whether plaintiff's reliance on the allegedly false representation was justified.

### 3. Punitive damages

"[A] trier of fact may not award punitive damages [for fraud] unless the plaintiff proved by 'clear and convincing' evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." *Ex parte Norwood Hodges Motor Co., Inc.,* 680 So. 2d 245, 249 (Ala. 1996). Plaintiff has presented evidence that a telephone representative of Celtic arguably misrepresented his second policy as a "renewal" or "extension" of the first policy, rather than a "new" policy, and that Celtic pre-certified his back surgery, yet

later denied coverage. That is sufficient to take the issue of punitive damages to a jury.

**B.  Breach of Contract**

Defendant contends, without citation to authority, that it did not breach its contract of insurance with plaintiff, because the policy stated that pre-existing conditions are excluded, and his back injury occurred before the effective date of the second policy. On summary judgment, the moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Defendant's motion fails in this regard.

Additionally, plaintiff presents evidence that his policy did not exclude coverage for pre-existing conditions which were fully disclosed to Celtic. As discussed in the previous section, Celtic admittedly was aware of plaintiff's back injury, because it paid for medical treatment related to that injury during the first policy period. Moreover, when plaintiff telephoned Celtic to obtain pre-approval for back surgery related to that same injury, his coverage was not questioned. Finally, defendant's argument necessarily assumes that plaintiff was issued two, mutually exclusive policies. Defendant ignores the possibility that a jury could find plaintiff was promised a renewal, or extension of his first policy. So construed, plaintiff's back injury was not a pre-

7

existing condition, and a jury could find that Celtic breached its contract to cover his medical expenses related to that injury. Accordingly, a triable issue is presented on plaintiff's breach of contract claim.

C.  **Bad Faith**

The tort of bad faith refusal to pay a valid insurance claim requires plaintiff to present substantial evidence of (1) an insurance contract between plaintiff and Celtic, (2) an intentional refusal to pay plaintiff's claim, (3) the absence of any reasonably legitimate or arguable reason for that refusal, and (4) Celtic's actual knowledge of the absence of any legitimate or arguable reason. *National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179 (Ala. 1982). Defendant contends plaintiff cannot establish the third element, because Celtic "had an arguable and debatable reason for denying coverage." (Defendant's Brief at 19.) This court agrees.

Plaintiff argues that "a reasonable juror could find that the Defendant[] failed to properly investigate the Plaintiff's claim. Additionally, a reasonable juror could conclude that the Plaintiff's condition was a valid claim under the contract and the Defendant[had] no legitimate or arguable reason for denying this claim." (Plaintiff's Brief at 18.) Even if that is true, it does not establish the absence of an "arguable or debatable" reason for Celtic's denial of plaintiff's claim. The Alabama Supreme Court instructs that:

8

> In the normal case in order for a plaintiff to make out a *prima facie* case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.

*National Life Insurance Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982).

This court has already determined that a genuine issue of material fact exists as to plaintiff's contract claim. The policy issued to plaintiff states that pre-existing conditions are excluded from coverage. Plaintiff sought coverage for treatment of an injury which occurred before the effective date of the second policy. Thus, Celtic's denial was based upon an arguably reasonable interpretation of the policy. Accordingly, plaintiff's bad faith claim is due to be dismissed.

## II. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be denied in part and granted in part. An order consistent with this opinion will be entered contemporaneously herewith.

Done this 13th day of August, 1998.

*[signature]*
United States District Judge

9